UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**4 : 0 9   CR   4 0 0 2 7 - FDS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. | |
| ) | | |
| v. ) | VIOLATIONS: | |
| ) | | |
| WILLIAM SCOTT DION, ) | 18 U.S.C. § 371 | (Conspiracy) |
| CATHERINE FLOYD, ) | 26 U.S.C. § 7201 | (Tax Evasion) |
| CHARLES ADAMS, ) | 26 U.S.C. § 7206(1) | (False Tax Return) |
| GAIL THORICK, ) | 26 U.S.C. § 7212(a) | (Obstructing the IRS) |
| MYRON THORICK, ) | 26 U.S.C. § 7203 | (Willful Failure to File) |
| GARY ALCOCK, and ) | | |
| KENNETH SCOTT ALCOCK, ) | | |
| ) | | |
| Defendants. ) | | |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

### Parties and Entities

1.      Defendant WILLIAM SCOTT DION resided in Uxbridge, Massachusetts.

2.      Defendant CATHERINE FLOYD resided in Uxbridge, Massachusetts with

defendant DION.

3.      Defendant CHARLES ADAMS resided in Wrentham, Massachusetts.

4.      Defendant GAIL THORICK resided in West Warwick, Rhode Island.

5.      Defendant MYRON THORICK, husband of defendant GAIL THORICK, resided

in West Warwick, Rhode Island.

6.      Defendant GARY ALCOCK resided in Westborough, Massachusetts.

7.      Defendant KENNETH SCOTT ALCOCK, brother of defendant GARY ALCOCK, resided in Westborough, Massachusetts.

8.      Unindicted co-conspirator UC-1 resided in Wrentham, Massachusetts.

9.      Contract America, Ltd. ("Contract America") was a corporation formed under Nevada law that defendants DION, FLOYD, and ADAMS owned and operated.

10.     Talent Management was a trust entity with operations in Massachusetts and elsewhere. In or about September 2001, defendants DION, FLOYD, and ADAMS began using the name Talent Management to conduct certain business.

11.     New Way Enterprises, Ltd. ("New Way"), was a Nevada corporation that assumed the operations of Talent Management in or about September 2003.

12.     Your Virtual Office, and its successor Office Services Intergroup Trust (collectively "YVO/Office Services") were businesses operated in Massachusetts and Coventry, Rhode Island, by defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK.

13.     Financial Factors, Ltd., was a corporation formed by defendant DION under Delaware law in April 1999.

14.     Mountain Management was a corporation formed by defendant DION under Nevada law in 2000.

15.     Calico Management, Ltd. ("Calico"), located in Rhode Island, was a corporation formed under the laws of Nevada in 2001 by defendants GAIL THORICK and MYRON THORICK, with the assistance of defendants DION and FLOYD.

-2-

16.     Business Management Systems ("BMS") was formed and operated by defendants
DION and FLOYD as a trust entity based in Uxbridge and Mendon, Massachusetts.

17.     G & K Trucking Company, Inc. ("G&K Trucking") was a trash hauling business
owned and operated by defendant GARY ALCOCK located in Shrewsbury, Massachusetts.

18.     Barkmulch & Loam Company, Inc. ("B&L") was a landscaping business owned
and operated by defendant GARY ALCOCK located in Shrewsbury, Massachusetts.

19.     Alex Management Corp. ("Alex Management") was a corporation formed at the
direction of defendant GARY ALCOCK in 2001 under the laws of Nevada for purposes of
conducting the financial transactions of G&K Trucking and B&L. Defendants DION and
FLOYD, through their entity BMS, assisted defendant GARY ALCOCK in forming Alex
Management.

### Introduction

20.     As detailed in Counts One, Two, and Three below, from in or about January 2000,
to in or about December 2005, defendants DION, FLOYD, ADAMS, GAIL THORICK, and
MYRON THORICK were in the business of promoting and operating a variety of tax fraud
schemes. Defendants DION, FLOYD, ADAMS, GAIL THORICK, and MYRON THORICK
offered subscribers a variety of schemes, and associated services, to assist the subscribers in
defrauding federal and state tax authorities. Defendants GARY ALCOCK and KENNETH
SCOTT ALCOCK, and others known and unknown to the Grand Jury, were subscribers to
several of these tax fraud schemes.

21.     As set forth in Count One of this Indictment, defendants DION, FLOYD, and
ADAMS promoted and operated a payroll tax fraud scheme, which they conducted under the

business names Contract America, Talent Management, and New Way. In conducting the payroll tax fraud scheme, defendants DION, FLOYD, and ADAMS provided – for a fee – third-party services that handled the issuance of paychecks for subscribing employers, employees, and individual workers.

Under the business name Contract America, defendants DION, FLOYD, and ADAMS received payments from employers and, on behalf of the employers, used those funds to pay wages and compensation to employees and individual workers "under the table" without properly accounting for, withholding, and paying over to the Internal Revenue Service Social Security, Medicare, and federal income taxes.

Under the business names Talent Management and New Way, defendants DION, FLOYD, and ADAMS received payments from employer-subscribers and used these funds to pay wages to employees on behalf of the subscribing employers. While accounting for, withholding, and paying over Social Security, Medicare, and income taxes, Talent Management and New Way nonetheless concealed the identities of the employer-subscribers from tax authorities.

22.     As detailed in Count Two of this Indictment, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK promoted and operated a "warehouse banking" tax fraud scheme, which they conducted under the business names Your Virtual Office, Office Services, and Calico, to assist subscribers in concealing the subscribers' receipt and expenditure of income.

To conduct the warehouse banking scheme, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK opened and controlled various accounts at multiple banking institutions, accounts which were opened and maintained under such names as

-4-

"Financial Factors," "Mountain Management," and "Calico Management " (collectively, the "Warehouse Accounts"). In conducting the warehouse banking tax fraud scheme, defendants received, deposited, and commingled within the Warehouse Accounts business receipts and other funds owned by numerous subscribers, thereby concealing from tax authorities the ownership, nature, and source of the funds. Using encrypted computer records to secretly record subscribers' ownership and control of the funds in the Warehouse Accounts, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK arranged to disburse funds from the Warehouse Accounts, at the subscribers' direction, in ways that concealed the subscribers' ownership and control of the funds; for example, disbursements were made by checks paid directly to subscribers' creditors and by cash delivered to subscribers.

In conjunction with the warehouse banking tax fraud scheme, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK, used entities created by BMS, including trusts, limited partnerships, and corporations, to further conceal subscribers' ownership and control of income and assets.

23.     As detailed in Count Three of this Indictment, defendants GARY ALCOCK and KENNETH SCOTT ALCOCK subscribed to the payroll tax fraud scheme promoted and operated by defendants DION, FLOYD, and ADAMS, and used the services of Contract America and Talent Management, both to pay various employees of GARY ALCOCK's businesses "under the table" and to conceal the identities of GARY ALCOCK and his businesses with respect to those employees who were paid "on the books."

Defendant GARY ALCOCK, with the assistance of defendants DION and FLOYD, also formed a corporation called Alex Management to handle financial transactions for

-5-

G&K Trucking and B&L, in order to conceal defendant GARY ALCOCK's ownership and control of those businesses. Defendant GARY ALCOCK also subscribed to banking services provided by defendants DION and FLOYD, including the warehouse banking tax fraud scheme.

## **Background**

## **The Income Tax System**

24.     The Internal Revenue Service ("IRS") is an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States.

25.     The tax laws of the United States require every citizen and resident of the United States who receives gross income in excess of the minimum filing amount established by law for a particular tax year to annually make and file an income tax return for that tax year, typically by April 15 of the following year. Individuals are required to prepare and file income tax returns on Form 1040, "U.S. Individual Income Tax Return," or its equivalent.

26.     The tax laws of the United States also require partnerships, corporations, and trusts to report income on tax returns to be filed with the IRS. Partnerships are required to report income on Form 1065, "U.S. Return of Partnership Income." Corporations are required to report income and tax due on Form 1120, "U.S. Corporation Income Tax Return." Trust entities are required to report income and tax due on Form 1041, "U.S. Income Tax Returns for Estates and Trusts."

27.     The IRS uses taxpayer identification numbers to review and determine the income tax compliance of individuals and businesses. For individuals, the IRS uses Social Security Numbers ("SSNs"). For business entities, the IRS uses Employer Identification Numbers ("EINs").

## The Payroll Tax System

28.    The tax laws of the United States require employers to withhold, account for, and pay over to the IRS taxes from employee wages, including federal income taxes, Medicare taxes, and Social Security taxes. The tax laws of the United States also require employers to account for and pay over to the IRS the employers' own shares of Medicare and Social Security taxes based upon wages paid to employees. These taxes are referred to in this Indictment collectively as "payroll taxes."

29.    To account for payroll taxes that must be paid to the IRS, the tax laws require employers and payers, either directly or through third-party payroll services acting on their behalf, to prepare and submit tax forms, including:

A.    Form 941, "Employer's Quarterly Federal Tax Return," to be filed quarterly with the IRS to report employer wages paid to employees, together with payment to the IRS for all payroll taxes due based upon those wages;

B.    Form W-2, "Wage and Tax Statement," to be filed annually with the IRS, to report to the IRS employee wages paid and payroll taxes due and withheld based on those wages, and to be given annually to employees for inclusion with the employees' individual income tax returns; and

C.    Form 1099-MISC, "Miscellaneous Income," to be filed annually with the IRS, to report amounts paid to persons who are not employees, such as independent contractors, and to be given to such persons for preparation of their individual income tax returns.

30.    These IRS Forms, which require disclosure of SSNs and EINs to the IRS so that the IRS can review and determine taxpayer compliance, enable the IRS to ascertain taxable wages and compensation paid by employers and other third parties, as well as the taxable compensation and income received by individuals.

## COUNT ONE
### Conspiracy
### (Title 18, United States Code, Section 371)

The Grand Jury further charges:

### The Payroll Tax Conspiracy

31.     The allegations in paragraphs One through Three, Eight through Eleven, Twenty,

Twenty-One, Twenty-Four, Twenty-Five, and Twenty-Seven through Thirty of this Indictment

are re-alleged and incorporated as if set forth in full herein.

32.     From in or about July 2001, to in or about September 2004, within the District of

Massachusetts and elsewhere,

### WILLIAM SCOTT DION,
### CATHERINE FLOYD,
### and
### CHARLES ADAMS,

defendants herein, did conspire with each other, and with other individuals known and unknown

to the Grand Jury, to defraud the United States and an agency thereof, to wit, the Internal

Revenue Service of the United States Department of Treasury, and did do acts to effect the object

of the conspiracy.

### Object of the Conspiracy

33.     It was the object of the Payroll Tax Conspiracy to use entities controlled by

defendants DION, FLOYD, and ADAMS, namely, Contract America, Talent Management, and

New Way, to defraud the United States of America and the IRS by impeding, impairing,

defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment,

computation, assessment, and collection of Social Security, Medicare, and federal income taxes

associated with wages and compensation paid on behalf of the various subscribers of Contract America, Talent Management, and New Way.

## Manner and Means of the Payroll Tax Conspiracy

34.    As a part of the Payroll Tax Conspiracy and in order to further its objectives, defendants DION, FLOYD, and ADAMS, together with others known and unknown to the Grand Jury, created, promoted, and operated a payroll tax fraud scheme, doing business as Contract America, Talent Management, and New Way, that assisted subscribers in defrauding the IRS regarding Social Security, Medicare, and federal income taxes. In total, DION, FLOYD, and ADAMS recruited and obtained approximately 150 subscribers to Contract America, including employers, employees, and individual workers.

35.    It was part of the Payroll Tax Conspiracy that defendants DION, FLOYD, and ADAMS, through Contract America, issued paychecks to employee-subscribers and individual workers "under the table" without accounting for, withholding, and paying over to the IRS Social Security, Medicare, and income taxes.

A.    To fund "under the table" payroll processed through Contract America, defendants DION, FLOYD, and ADAMS required employer-subscribers to make payments to Contract America. The payments included fees charged by Contract America.

B.    Upon receiving and depositing payments from subscribers, defendants DION, FLOYD, and ADAMS prepared and issued paychecks to employees and workers without accounting for, withholding, and paying over to the IRS Social Security, Medicare, and income taxes. Defendants issued the paychecks, which represented gross pay, without attaching any pay stub or otherwise accounting for Social Security, Medicare, and income taxes due.

-9-

C.    Defendants DION, FLOYD, and ADAMS routinely directed Contract America subscribers to complete "Account Set-Up Worksheets." These worksheets included certain identifying information, such as the names and addresses of the subscribers, and the hourly rates to be paid to particular employees and workers, necessary to prepare paychecks. The Account Set-Up Worksheets did not include any requests for, and disclosure of, SSNs and EINs that were necessary to prepare required IRS tax forms.

D.    Defendants DION, FLOYD, and ADAMS did not request from subscribers their SSNs and EINs, did not prepare or file the required IRS Forms 941 to report wages to the IRS, did not collect or pay over required payroll taxes to the IRS, and did not prepare or issue required IRS Forms W-2 and 1099-MISC to employees and individual workers. To the contrary, defendants assured subscribers that there would be no disclosure to the IRS.

36.    It was further part of the Payroll Tax Conspiracy that defendants DION, FLOYD, and ADAMS, together with others known and unknown to the Grand Jury, operated Talent Management and New Way as alternative payroll services to provide cover to employer-subscribers who sought to conceal wages paid to employees through Contract America.

A.    Some employees of employer-subscribers objected to being paid "under the table" through Contract America and insisted that taxes be accounted for, withheld, and paid over to the IRS.

B.    Defendants DION, FLOYD, and ADAMS created, operated, and promoted Talent Management and New Way as a means for employer-subscribers of Contract America to pay those employees who wished to be paid "on the books," while nonetheless concealing the identities of employer-subscribers from the IRS.

C.   Defendants DION, FLOYD, and ADAMS routinely caused Talent Management and New Way to prepare and file IRS Forms 941, W-2, and 1099-MISC reflecting wages paid to certain employees of employer-subscribers.

D.   Talent Management and New Way, in order to provide cover for employer-subscribers who also paid some employees "under the table" through Contract America, listed on tax forms filed with the IRS that Talent Management and New Way were the employers without any disclosure of the names and tax identification numbers of the employer-subscribers for whom the employees worked.

### Overt Acts

In furtherance of the Payroll Tax Conspiracy, in the District of Massachusetts and elsewhere, defendants DION, FLOYD, and ADAMS, and others, committed, and caused to be committed, among others, the following overt acts:

37.   On or about July 11, 2001, defendants DION, FLOYD, and ADAMS formed Contract America.

38.   On various dates, from and including July 31, 2001, to and including June 30, 2004, defendant ADAMS and UC-1 caused no fewer than four hundred deposits to be made, representing payments from subscribers to Contract America, into Contract America's bank account.

39.   On various dates, from and including July 29, 2001, to and including July 16, 2004, defendant ADAMS and UC-1, on behalf of Contract America subscribers, caused no fewer than four thousand paychecks to be issued and drawn on the Contract America bank account at Strata Bank, and made payable to employees and individual workers.

40.    On various dates, from and including September 4, 2001, to and including October 31, 2003, defendant DION caused no fewer than five hundred paychecks to be issued and drawn on a Talent Management bank account, payable to employees of employer-subscribers.

41.    On various dates, from and including November 12, 2003, to and including July 28, 2004, defendants DION, FLOYD, and ADAMS caused no fewer than two hundred paychecks to be issued and drawn on a New Way bank account at Strata Bank, payable to employees of employer-subscribers.

42.    On various dates, from and including July 30, 2004, to and including September 29, 2004, defendants DION, FLOYD, and ADAMS, with the assistance of others known to the Grand Jury, caused no fewer than one hundred paychecks to be issued and drawn on a New Way bank account at Citizens Bank, payable to employees of employer-subscribers.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Conspiracy
### (Title 18, United States Code, Section 371)

The Grand Jury further charges:

### The Warehouse Banking Conspiracy

43.    The allegations in paragraphs One, Two, Four, Five, Twelve through Sixteen, Twenty, Twenty-Two, and Twenty-Four through Twenty-Seven of this Indictment are re-alleged and incorporated as if set forth in full herein.

44.    From in or about January 2000, to in or about December 2005, within the District of Massachusetts and elsewhere,

**WILLIAM SCOTT DION,
CATHERINE FLOYD,
GAIL THORICK,
and
MYRON THORICK,**

defendants herein, did conspire with each other, and with other individuals known and unknown to the Grand Jury, to defraud the United States and an agency thereof, to wit, the Internal Revenue Service of the United States Department of Treasury, and did do acts to effect the object of the conspiracy.

### Object of the Conspiracy

45.    It was the object of the Warehouse Banking Conspiracy to use entities and bank accounts controlled by defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK, namely YVO/Office Services and Calico, to defraud the United States of America and the IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in

-13-

the ascertainment, computation, assessment, and collection of federal income taxes of the various subscribers of YVO/Office Services and Calico.

**Manner and Means of the Conspiracy**

46.    As a part of the Warehouse Banking Conspiracy and in order to further its objectives, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK created, promoted, operated, and collected fees in connection with a warehouse banking tax fraud scheme, doing business as YVO/Office Services and Calico, which scheme was designed to assist subscribers in concealing financial transactions, assets, and income from the IRS. Defendants opened and controlled multiple bank accounts into which were deposited and commingled various subscribers' business receipts and other funds.  In conjunction with the warehouse banking tax fraud scheme, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK used entities created by BMS, including trusts, limited partnerships, and corporations, to further conceal the ownership and control of subscriber income and assets.  In total, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK caused more than $16 million to be deposited into the Warehouse Accounts.

47.    It was part of the Warehouse Banking Conspiracy that defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK operated a warehouse banking tax fraud scheme known as YVO/Office Services to help subscribers conceal their income and assets from the IRS by enabling subscribers to conduct financial transactions using names other than their own.

A.    Defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK opened and maintained bank accounts at multiple banks including, but not limited to, Strata Bank, Sovereign Bank, Savers Co-operative Bank, and Citizens Bank.

-14-

B.     Defendants, rather than open and maintain the Warehouse Accounts in the names of subscribers or in the names of YVO/Office Services, opened the accounts using nominee entities such as "Financial Factors" and "Mountain Management."

C.     Defendants routinely deposited, commingled, and "warehoused" within these accounts business receipts and other funds belonging to multiple subscribers.

D.     Defendants maintained secret, encrypted records to track the account balances and financial activities of individual subscribers within the commingled accounts.

E.     Defendants instructed subscribers to arrange for withdrawals from the Warehouse Accounts by having checks drawn on the Warehouse Accounts and made payable to third-parties whom the subscribers wished to pay.

F.     Defendants further arranged to disburse cash from the Warehouse Accounts by causing checks to be made payable to "cash" or payable to individuals who worked at YVO/Office Services.  Defendants routinely caused such checks to be cashed at a check cashing service and thereafter delivered the cash to subscribers by hand delivery, or by mail with the cash wrapped in aluminum foil in order to avoid detection by governmental authorities.

G.     To conceal YVO/Office Services' substantial cash transactions from governmental authorities, defendants routinely arranged that checks were cashed in amounts of $10,000 or less, in order to avoid the filing of Currency Transaction Reports that are required by law for cash transactions exceeding $10,000.

48.     It was further part of the Warehouse Banking Conspiracy that defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK, following the execution of federal search warrants at the residence and business of defendant DION in Uxbridge, Massachusetts in January

-15-

2003, transferred the warehouse banking activities of YVO/Office Services to Calico Management.

        A.     Calico maintained a bank account at Citizens Bank.

        B.     Similar to YVO/Office Services, business receipts and other funds belonging to multiple subscribers were deposited and commingled in the Calico account. Funds were withdrawn from this account by check and by cash similar to YVO/Office Services.

      49.    It was further part of the Warehouse Banking Conspiracy that defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK used nominee entities created by BMS, including trusts, limited partnerships, and corporations, to conceal the ownership and control of subscriber income and assets.

        A.     Defendants DION and FLOYD, through their business BMS, created and maintained the nominee entities Financial Factors and Mountain Management, which were used to open Warehouse Accounts.

        B.     Defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK used Calico, an entity created by DION and FLOYD through their business BMS, to open a Warehouse Account and to conduct the warehouse banking scheme.

        C.     Defendants DION and FLOYD, operating under the business name BMS, assisted subscribers in setting up business entities, including partnerships, trusts, and corporations, in order to conceal subscribers' ownership and control of assets or income.

        D.     Defendants DION and FLOYD routinely solicited individuals to subscribe to both the BMS business of creating nominee business entities, and the warehouse banking services provided through YVO/Office Services and Calico. In so doing, defendants provided to

subscribers multiple layers of concealment: subscribers arranged to have business receipts and other funds paid to nominee entities created through BMS, and the funds were thereafter deposited into Warehouse Accounts held in the names Financial Factors, Mountain Management, and Calico.

50.     It was further part of the conspiracy that defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK used multiple post office boxes to conduct the warehouse banking scheme.

### Overt Acts

In furtherance of the conspiracy, in the District of Massachusetts and elsewhere, defendants DION, FLOYD, GAIL THORICK, and MYRON THORICK, and others known and unknown to the Grand Jury, committed and caused to be committed, among others, the following overt acts:

51.     On or about January 12, 2000, defendants FLOYD and DION caused a bank account to be opened at Citizens Bank in the name of "Financial Factors, Ltd."

52.     On or about February 3, 2000, defendant FLOYD applied for and opened Post Office Box 46 in Mendon, Massachusetts in the name of Business Management Systems, listing defendant DION as an authorized representative to access Box 46.

53.     On or about February 16, 2000, defendant DION applied for and opened Post Office Box 9 in Mendon, Massachusetts in the name of "William Dion - Office Services."

54.     On or about June 20, 2000, defendants FLOYD and DION caused a bank account to be opened at Strata Bank in the name of "Financial Factors."

-17-

55.    On or about June 20, 2000, defendants FLOYD and DION caused a bank account to be opened at Savers Co-operative Bank in the name of "Financial Factors."

56.    On or about August 8, 2000, defendants FLOYD and DION caused a bank account to be opened at Sovereign Bank in the name of "Mountain Management."

57.    On or about September 15, 2000, defendants DION and FLOYD established Business Management Systems.

58.    On or about September 15, 2000, defendants DION and FLOYD established Office Services Intergroup Trust.

59.    On or about September 21, 2001, defendants FLOYD and GAIL THORICK caused a bank account to be opened at Citizens Bank in the name of "Mountain Management."

60.    On or about February 3, 2003, defendant GAIL THORICK opened a bank account at Citizens Bank in the name of "Calico Management."

61.    On or about November 21, 2005, defendant GAIL THORICK filed an annual list of officers, directors, and resident agent for Calico identifying defendant DION as director of Calico Management.

62.    On various dates, from and including January 3, 2000, to and including January 22, 2003, defendants DION and FLOYD caused business receipts and other funds of subscribers to be deposited into various Warehouse Accounts.

63.    On various dates, from and including January 3, 2000, to and including January 22, 2003, defendants DION and FLOYD caused checks to be drawn from Warehouse Accounts at the direction of subscribers.

-18-

64.    On various dates, from and including December 20, 2001, to and including December 3, 2002, defendant GAIL THORICK caused business receipts and other funds of subscribers to be deposited into a bank account held at Citizens Bank, opened and maintained in the name Mountain Management.

65.    On various dates, from and including November 26, 2001, to and including January 6, 2003, defendant GAIL THORICK caused checks to be drawn on a bank account held at Citizens Bank, opened and maintained in the name Mountain Management, on behalf of subscribers.

66.    On various dates, from and including March 26, 2000, to and including January 7, 2003, defendants DION and FLOYD caused checks, drawn on the Warehouse Accounts, to be cashed in amounts of $10,000 and less.

67.    On various dates, from and including June 4, 2003, to and including December 6, 2005, defendant GAIL THORICK caused business receipts and other funds of subscribers to be deposited into the Calico account maintained at Citizens Bank.

68.    On various dates, from and including February 12, 2003, to and including December 27, 2005, defendant GAIL THORICK caused checks to be drawn on the Calico account held at Citizens Bank, on behalf of subscribers.

69.    On various dates, from and including March 20, 2003, to and including December 13, 2005, defendant GAIL THORICK caused checks, drawn on the warehouse bank account operated by Calico at Citizens Bank, to be cashed in amounts of $10,000 and less.

70.    On various dates, from and including December 18, 2000, to and including December 15, 2005, defendant MYRON THORICK caused checks to be cashed in amounts of $10,000 and less, drawn from the Warehouse Accounts.

71.    On various dates, from and including April 27, 2000, to and including March 17, 2004, defendants DION and FLOYD caused nominee entities to be created and maintained on behalf of BMS subscribers whose funds were deposited into the Warehouse Accounts.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
### Conspiracy
### (Title 18, United States Code, Section 371)

The Grand Jury further charges:

### The Alcock Payroll Tax Conspiracy

72.     The allegations in paragraphs One through Thirty of this Indictment are re-alleged

and incorporated as if set forth in full herein.

73.     From in or about September 2001, to in or about January 2004, within the District

of Massachusetts and elsewhere,

### GARY ALCOCK,
### and
### KENNETH SCOTT ALCOCK,

defendants herein, did conspire with each other, with co-conspirators DION, FLOYD, and

ADAMS, and with other individuals known and unknown to the Grand Jury, to defraud the

United States and an agency thereof, to wit, the Internal Revenue Service of the United States

Department of Treasury, and did do acts to effect the object of the conspiracy.

### Object of the Conspiracy

74.     It was the object of the Alcock Payroll Tax Conspiracy to enable GARY

ALCOCK and KENNETH SCOTT ALCOCK to defraud the United States of America and the

IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the

IRS in the ascertainment, computation, assessment, and collection of payroll taxes for GARY

ALCOCK's trash hauling and landscaping businesses.

### Manner and Means of the Conspiracy

75.    As a part of the Alcock Payroll Tax Conspiracy and in order to further its objectives, defendant GARY ALCOCK, owner and operator of G&K Trucking and B&L based in Shrewsbury, Massachusetts, retained the services of Contract America, in order to pay certain employees "under the table."

76.    It was further part of the Alcock Payroll Tax Conspiracy that defendant GARY ALCOCK retained the services of Talent Management in order to pay those of his employees who requested withholding of payroll taxes from their paychecks.  In order to avoid filing Forms 941, W-2, and 1099-MISC for these employees in the names of his own businesses, defendant GARY ALCOCK directed that Talent Management pay those employees who requested payroll tax withholdings, thus concealing his scheme to pay other employees "under the table" through Contract America.

77.    It was further part of the conspiracy that defendant GARY ALCOCK, to further conceal his business activities and his evasion of payroll taxes, subscribed to the services of BMS in order to create a nominee corporation called Alex Management.

A.    From in or about September 2001, as defendant GARY ALCOCK knew, defendant GARY ALCOCK'S companies G&K Trucking and B&L collectively owed approximately $161,335 in payroll taxes, plus penalties and interest, that G&K Trucking and B&L had failed to pay in previous quarters.

B.    To impair and impede the IRS's ability to assess and collect past and future payroll taxes owed by his businesses, defendant GARY ALCOCK, with the assistance of

-22-

co-conspirators DION and FLOYD, formed Alex Management, listing co-conspirators DION and

FLOYD as officers and directors of that corporation.

C.    Defendant KENNETH SCOTT ALCOCK listed himself as a corporate

officer and director of Alex Management to help conceal defendant GARY ALCOCK's

ownership of the businesses.

78.    It was further part of the conspiracy that defendant GARY ALCOCK subscribed

to banking services offered by defendants DION and FLOYD in order to further conceal the

financial transactions and business activities of his trash hauling and landscaping businesses.

A.    To conceal receipts from customers, defendant GARY ALCOCK

subscribed to the warehouse banking services of YVO/Office Services.

B.    Defendant GARY ALCOCK directed that co-conspirators DION and

FLOYD open a bank account at Milford National Bank and Trust, in the name of Alex

Management, which was used for, among other things, paying Contract America for purposes of

evading payroll taxes.  While co-conspirator FLOYD was the authorized signatory on the

account, defendant GARY ALCOCK directed the payments into and out of the account.

79.    It was further part of the conspiracy that defendant GARY ALCOCK opened a

bank account, at Millbury National Bank, in the name of Alex Management, in order to further

conceal the financial transactions and business activities of his trash hauling and landscaping

businesses.

A.    Defendant GARY ALCOCK used the Millbury National Bank account,

opened and maintained in the name of the nominee Alex Management, to deposit business

receipts and to pay Contract America for "under the table" payroll services.

-23-

B.    Defendant KENNETH SCOTT ALCOCK assisted defendant GARY ALCOCK in handling the financial transactions of Alex Management at Millbury National Bank by making deposits that were then used to pay Contract America.

80.    It was further part of the conspiracy that defendants KENNETH SCOTT ALCOCK and GARY ALCOCK encouraged employees of G&K Trucking and B&L to accept payment through Contract America, and told employees that wages paid through Contract America would not be reported to the IRS.

### Overt Acts

In furtherance of the conspiracy, in the District of Massachusetts and elsewhere, defendants GARY ALCOCK and KENNETH SCOTT ALCOCK, as well as co-conspirators DION and FLOYD, and others known and unknown to the Grand Jury, committed and caused to be committed, among others, the following overt acts:

81.    On or about September 11, 2001, defendant GARY ALCOCK deposited a check in the amount of $11,316.53, made payable to G&K Trucking, into an account at Sovereign Bank opened and maintained in the name of Mountain Management.

82.    On or about September 26, 2001, defendant GARY ALCOCK formed "Alex Management Corp."

83.    On or about October 18, 2001, co-conspirator FLOYD opened a bank account at the Milford National Bank and Trust Company in the name of "Alex Management Corp."

84.    On or about March 5, 2002, defendant GARY ALCOCK caused a bank account to be opened at Millbury National Bank in the name of Alex Management.

-24-

85.    On or about March 12, 2002, defendant GARY ALCOCK deposited a check, made payable to B&L, into an account at Sovereign Bank opened and maintained in the name Mountain Management.

86.    On or about March 20, 2002, defendants KENNETH SCOTT ALCOCK and GARY ALCOCK caused an annual list of officers, directors, and resident agent for Alex Management to be filed with the Nevada Secretary of State, which reflected KENNETH SCOTT ALCOCK as the President of Alex Management.

87.    On or about April 22, 2002, defendant GARY ALCOCK authorized defendant KENNETH SCOTT ALCOCK to make deposits and obtain account balance information at Millbury National Bank on behalf of "Alex Management Corp."

88.    On various dates, from and including October 31, 2001, to and including December 12, 2002, defendant GARY ALCOCK caused payments to be sent to Talent Management from bank accounts opened and maintained in the name of Alex Management.

89.    On various dates, from and including November 13, 2001, to and including November 6, 2003, defendant GARY ALCOCK caused checks, drawn on the Contract America bank account at Strata Bank, to be made payable to employees of his trash hauling and landscaping businesses.

90.    On various dates, from and including December 26, 2001, to and including November 6, 2003, defendant GARY ALCOCK caused payments to be sent to Contract America from bank accounts opened and maintained in the name of Alex Management.

91.    On or about January 16, 2004, defendant KENNETH SCOTT ALCOCK caused an annual list of officers, directors, and resident agent for Alex Management to be filed with the

-25-

Nevada Secretary of State, which listed KENNETH SCOTT ALCOCK as the sole corporate

officer.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOUR
### Corruptly Endeavoring to Obstruct and Impede the
### Due Administration of the Internal Revenue Laws
### (Title 26, United States Code, Section 7212(a))

The Grand Jury further charges:

92.     The allegations in Paragraphs One, Two, Four, Five, Twelve through Sixteen, Twenty, Twenty-Two, Twenty-Four through Twenty-Seven, Forty-Six through Fifty, Fifty-One through Fifty-Eight, Sixty-One through Sixty-Three, Sixty-Six, and Seventy-One of this Indictment are re-alleged and incorporated as if set forth in full herein.

93.     From in or about 2000, to in or about 2007, defendant DION earned fees from the promotion and operation of various tax fraud schemes. During that time, defendant DION did not file a federal individual income tax return and did not pay federal individual income taxes.

94.     On various dates, from and including February 28, 2000, to and including August 14, 2007, defendant DION corruptly endeavored to obstruct and impede the IRS's ability to determine his income and to assess taxes he owed by employing – among others – the following means to conceal his income and assets:

        A.     Defendant DION earned fees from BMS. On various dates, from and including June 14, 2000, to and including August 14, 2007, defendant DION deposited into the Warehouse Accounts checks made payable to BMS.

        B.     Defendant DION earned fees from operating the warehouse banking tax fraud scheme by charging subscribers for each deposit, check, and cash withdrawal. On various dates, from and including June 5, 2000, to and including January 6, 2003, defendant DION deducted said fees from the secret account balances of subscribers, while leaving the fees commingled within the Warehouse Accounts.

-27-

    C.     On various dates, from and including March 1, 2000, to and including January 7, 2003, defendant DION caused to be cashed numerous checks, drawn on the Warehouse Accounts, all in amounts of $10,000 and less.

    D.     On various dates, from and including February 28, 2000, to and including August 1, 2007, defendant DION issued checks drawn from the Warehouse Accounts to pay his personal expenses.

95.     From in or about February 2000, to in or about August 2007, in the District of Massachusetts and elsewhere,

## WILLIAM SCOTT DION,

defendant herein, did corruptly obstruct and impede and endeavor to obstruct and impede the due administration of the internal revenue laws of the United States concerning the ascertainment, computation, assessment, and collection of his federal income taxes.

All in violation of Title 26, United States Code, Section 7212(a), and Title 18, United States Code, Section 2.

-28-

## COUNT FIVE
### Corruptly Endeavoring to Impair and Impede the
### Due Administration of the Internal Revenue Code
### (Title 26, United States Code, Section 7212(a))

The Grand Jury further charges:

96.    The allegations in Paragraphs One, Two, Four, Five, Twelve through Sixteen, Twenty, Twenty-Two, Twenty-Four through Twenty-Seven, Forty-Six through Fifty-Two, Fifty-Four through Fifty-Nine, Sixty-Two through Sixty-Three, Sixty-Six, and Seventy-One of this Indictment are re-alleged and incorporated as if set forth in full herein.

97.    From in or about 2000, to in or about 2007, defendant FLOYD earned fees from the promotion and operation of various tax fraud schemes.  During that time, defendant FLOYD did not file a federal individual income tax return and did not pay federal individual income taxes.

98.    On various dates, from and including February 3, 2000, to and including August 14, 2007, defendant FLOYD corruptly endeavored to obstruct and impede the IRS's ability to determine her income and to assess taxes she owed by employing – among others – the following means to conceal her income and assets:

A.    Defendant FLOYD earned fees from BMS.  On various dates, from and including June 14, 2000, to and including August 14, 2007, defendant FLOYD deposited into the Warehouse Accounts checks made payable to BMS.

B.    Defendant FLOYD earned fees from operating the warehouse banking tax fraud scheme by charging subscribers for each deposit, check, and cash withdrawal.  On various dates, from and including June 5, 2000, to and including January 6, 2003, defendant FLOYD

deducted said fees from the secret account balances of subscribers, while leaving the fees commingled within the Warehouse Accounts.

      C.    On various dates, from and including February 3, 2000, to and including November 25, 2002, defendant FLOYD issued checks drawn from the Warehouse Accounts to pay her personal expenses.

      D.    On various dates, from and including December 4, 2001, to and including January 7, 2003, defendant FLOYD caused to be cashed numerous checks, drawn on the Warehouse Accounts, all in amounts of $10,000 and less.

99.    From in or about February 2000, to in or about August 2007, in the District of Massachusetts and elsewhere,

## CATHERINE FLOYD,

defendant herein, did corruptly obstruct and impede and endeavor to obstruct and impede the due administration of the internal revenue laws of the United States concerning the ascertainment, computation, assessment, and collection of her federal income taxes.

All in violation of Title 26, United States Code, Section 7212(a), and Title 18, United States Code, Section 2.

-30-

## COUNT SIX
### Tax Evasion – Evasion of Payment
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

100.    The allegations in paragraphs Three, Sixteen, and Twenty-Four through Twenty-Seven of this Indictment are re-alleged and incorporated as if fully set forth herein.

101.    For the calendar year 1996, defendant ADAMS did not file a federal income tax return and did not pay federal income taxes despite earning sufficient income during 1996 as to be legally obligated to make and file such a return.

102.    On or about February 8, 1998, the IRS assessed defendant ADAMS for a substantial personal income tax due and owing in the amount of $24,585 for the tax year 1996.

103.    On or about November 16, 1998, the IRS notified defendant ADAMS of its tax assessment for defendant for the tax year 1996.

104.    On or about December 7, 1998, the IRS notified defendant ADAMS of its intent to levy his assets based upon his unpaid taxes due and owing for the tax year 1996.

105.    On or about July 7, 2000, the IRS notified defendant ADAMS of a federal tax lien filed against him for his unpaid tax liability for the tax year 1996.

106.    From in or about December 2000, to in or about February 2005, within the District of Massachusetts and elsewhere,

### CHARLES ADAMS,

defendant herein, a resident of Wrentham, Massachusetts, did willfully attempt to evade and defeat the payment of a large part of the income tax, penalties, and interest due and owing by him

to the United States of America assessed against him for the tax year 1996 by committing the following affirmative acts, among others:

       A.    With the assistance of defendants DION and FLOYD, creating and using the nominee "Computer Systems Consulting, LP" for purposes of receiving income and holding assets;

       B.    Using the nominee "Norfolk Automation" for purposes of receiving payments from Contract America;

       C.    Creating and using the nominees "Baystate Trust" and "Blackberry Hill Trust" to conceal assets from the IRS;

       D.    Using a bank account in the nominee name of "Computer Systems Consulting, LP";

       E.    Cashing numerous checks, all in amounts of $10,000 and less; and

       F.    Making extensive use of money orders to pay for expenses.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SEVEN
### Tax Evasion
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

107.    The allegations in paragraphs Three, Nine through Eleven, Sixteen, Twenty, Twenty-One, and Twenty-Four through Thirty of this Indictment are re-alleged and incorporated as if fully set forth herein.

108.    During the calendar year 2003, in the District of Massachusetts and elsewhere,

### CHARLES ADAMS,

defendant herein, a resident of Wrentham, Massachusetts, had and received taxable income in the approximate sum of $51,831; upon that taxable income there was owing to the United States of America a substantial income tax; well knowing and believing the foregoing facts, defendant ADAMS did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for the calendar year 2003 by failing to make an income tax return on or before April 15, 2004, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service the said income tax, and by committing the following affirmative acts: causing checks to be written from Contract America to nominee entities, using a bank account maintained under a nominee name, making extensive use of cash, and using money orders to pay for expenses.

All in violation of Title 26, United States Code, Section 7201.

## COUNT EIGHT
### Tax Evasion
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

109.    The allegations in paragraphs Three, Nine through Eleven, Sixteen, Twenty,

Twenty-One, and Twenty-Four through Thirty of this Indictment are re-alleged and incorporated

as if fully set forth herein.

110.    During the calendar year 2004, in the District of Massachusetts and elsewhere,

### CHARLES ADAMS,

defendant herein, a resident of Wrentham, Massachusetts, had and received taxable income in the

approximate sum of $12,882; upon that taxable income there was owing to the United States of

America a substantial income tax; well knowing and believing the foregoing facts, defendant

ADAMS did willfully attempt to evade and defeat the said income tax due and owing by him to

the United States of America for the calendar year 2004 by failing to make an income tax return

on or before April 15, 2005, as required by law, to any proper officer of the Internal Revenue

Service, by failing to pay the Internal Revenue Service the said income tax, and by committing

the following affirmative acts: causing checks to be written from Contract America to nominee

entities, using a bank account maintained under a nominee name, making extensive use of cash,

and using money orders to pay for expenses.

All in violation of Title 26, United States Code, Section 7201.

## COUNTS NINE THROUGH ELEVEN
### Filing Of A False Tax Return
### (Title 26, United States Code, Section 7206(1))

The Grand Jury further charges:

111.   The allegations in paragraphs One, Two, Four, Five, Twelve through Sixteen, Twenty, Twenty-Two, and Twenty-Four through Twenty-Seven of this Indictment are re-alleged and incorporated as if fully set forth herein.

112.   On or about the dates set forth below, in the District of Massachusetts and elsewhere,

### GAIL THORICK,
### and
### MYRON THORICK,

defendants herein, did willfully make and subscribe to joint federal individual income tax returns, Forms 1040, for each tax year identified below, each of which was verified by a written declaration that it was made under the penalties of perjury, which returns defendants GAIL THORICK and MYRON THORICK did not believe to be true and correct as to every material matter. The Forms 1040, for the tax years identified below, which were filed with the Director, Internal Revenue Service Center, at Andover, Massachusetts, stated at Line 22 that defendants GAIL THORICK and MYRON THORICK received joint total income in the amounts identified below whereas, as defendants GAIL THORICK and MYRON THORICK then and there knew and believed, defendants GAIL THORICK and MYRON THORICK jointly received materially more income than they reported:

-35-

| | | | | |
|---|---|---|---|---|
| | 3/29/2004 | 2003 | Line 22, Total Income | $66,132 |
| | 3/13/2005 | 2004 | Line 22, Total Income | $73,744 |
| | 4/9/2006 | 2005 | Line 22, Total Income | $83,080 |

All in violation of Title 26, United States Code, Section 7206(1), and Title 18, United States Code, Section 2.

### COUNTS TWELVE THROUGH FIFTEEN
**Tax Evasion**
**(Title 26, United States Code, Section 7201)**

The Grand Jury further charges:

113.    The allegations in paragraphs One through Three, Six through Eleven, Sixteen through Twenty-One, Twenty-Three, Twenty-Four, and Twenty-Seven through Thirty of this Indictment are re-alleged and incorporated as if fully set forth herein.

114.    During the quarterly tax periods identified below, in the District of Massachusetts and elsewhere,

### GARY ALCOCK,

defendant herein, a resident of Westborough, Massachusetts, conducted businesses under the name Alex Management, with a principal place of business in Shrewsbury, Massachusetts, and did willfully attempt to evade and defeat a large part of the federal income taxes, Medicare taxes, and Social Security taxes that the law required the defendant to collect, truthfully account for, and pay over to the Internal Revenue Service for the quarterly tax periods set forth below, by failing to withhold payroll taxes from employee paychecks, by failing to file with the Internal Revenue Service an Employer's Quarterly Federal Tax Return, Form 941, on or before the filing deadlines set forth below, by failing to pay over the amount of payroll taxes due and owing to the Internal Revenue Service, and by committing the following affirmative acts: using the corporation Alex Management to conceal business activity from the Internal Revenue Service; subscribing to the payroll services of Contract America; and subscribing to the payroll services of Talent Management:

| | | |
|---|---|---|
| 4th Quarter, 2002 | January 31, 2003 | $106,151 |
| 1st Quarter, 2003 | April 30, 2003 | $28,233 |
| 2nd Quarter, 2003 | July 31, 2003 | $31,531 |
| 3rd Quarter, 2003 | October 31, 2003 | $23,143 |

All in violation of Title 26, United States Code, Section 7201.

## COUNT SIXTEEN
### Tax Evasion – Evasion of Payment
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

115.    The allegations in paragraphs One, Two, Six, Sixteen through Nineteen, Twenty-Four, and Twenty-Seven through Thirty of this Indictment are re-alleged and incorporated as if fully set forth herein.

116.    During the calendar years 2000 and 2001, defendant GARY ALCOCK owned and operated G&K Trucking and B&L.  As sole corporate officer of those businesses, defendant GARY ALCOCK was the person legally responsible for truthfully accounting for and paying over to the IRS payroll taxes based upon wages paid to employees of these businesses.

117.    For the quarters ending September 2000, December 2000, and June 2001, defendant GARY ALCOCK, for both G&K Trucking and B&L, filed Forms 941 reporting wages paid and payroll taxes owed by both businesses.

118.    Despite filing these returns, defendant GARY ALCOCK failed to pay over to the IRS payroll taxes due and owing by G&K Trucking for the quarters ending September 2000 and December 2000, and failed to pay over payroll taxes due and owing by B&L for the quarter ending June 2001.

119.    On or about September 29, 2003, the IRS personally assessed defendant GARY ALCOCK a trust fund recovery penalty for unpaid payroll taxes due and owing by B&L, for the quarter ending June 2001, in an amount totaling $10,910.

120.    On or about October 20, 2003, the IRS personally assessed defendant GARY ALCOCK a trust fund recovery penalty for unpaid payroll taxes due and owing by G&K Trucking, for the quarters ending September 2000 and December 2000, in amounts totaling $11,608 and $59,764, respectively.

121.    From in or about March 2004, to in or about February 2006, in the District of Massachusetts and elsewhere,

**GARY ALCOCK,**

defendant herein, did willfully attempt to evade and defeat the payment of a substantial part of the trust fund recovery penalties due and owing by him to the United States of America, assessed against him as the responsible person of G&K Trucking and B&L, for the quarterly tax periods ending September 2000, December 2000, and June 2001, by, among other things:

A.      On or about March 15, 2004, defendant GARY ALCOCK used a nominee bank account, in the name Alex Management, in order to make a $10,000 down payment for a 2005 Renegade motor home.

B.      On or about February 24, 2005, defendant GARY ALCOCK registered the 2005 Renegade motor home, for which he paid approximately $286,000, in New Hampshire in the names of his spouse and his father.

C.      On or about July 8, 2005, defendant GARY ALCOCK purchased a Millbury National Bank cashier's check in the amount of $130,000.00 and used it to purchase a 1998 Caterpillar excavator in the name of his nominee, Alex Management.

D.      On or about September 2, 2005, defendant GARY ALCOCK purchased a Millbury National Bank cashier's check in the amount of $450,000, and used it to invest in a real estate development project in Northborough, Massachusetts.

E.      On or about February 23, 2006, defendant GARY ALCOCK formed "G&C Motorcoaching, LLC," a Montana-based limited liability company, for purposes of holding title to a new 2006 Renegade motor home he purchased on February 8, 2006, after trading in his 2005 Renegade motor home.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SEVENTEEN
### Willful Failure to File Return
### (Title 26, United States Code, Section 7203)

The Grand Jury further charges:

122.    The allegations in paragraphs Six, and Twenty-Four through Twenty-Seven of this Indictment are re-alleged and incorporated as if fully set forth herein.

123.    In 2000, defendant GARY ALCOCK formed AJA Realty Corp. under the laws of Massachusetts for purposes of owning and managing real estate.

124.    During the calendar year 2005, in the District of Massachusetts and elsewhere,

**GARY ALCOCK,**

defendant herein, was the President, owner, operator, and sole corporate officer of AJA Realty Corp., a corporation not expressly exempt from tax, with its principal place of business in Shrewsbury, Massachusetts. Defendant GARY ALCOCK therefore was required by law, after the close of the calendar year 2005, and on or before March 15, 2006, to make an income tax return for and on behalf of the corporation, to the District Director of the Internal Revenue Service, the Director of the Internal Revenue Service Center, and any other proper officer of the United States, stating specifically the items of the corporation's gross income and the deductions and credits allowed by law. Well knowing and believing the foregoing, defendant GARY ALCOCK did willfully fail, on or before March 15, 2006, in the District of Massachusetts and elsewhere, to make an income tax return for AJA Realty Corp. at the time required by law.

All in violation of Title 26, United States Code, Section 7203.

## COUNT EIGHTEEN
### Tax Evasion
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

125.    The allegations in paragraphs One, Two, Four, Five, Seven, Sixteen, Twenty,

Twenty-Two, and Twenty-Four through Thirty of this Indictment are re-alleged and incorporated

as if fully set forth herein.

126.    During the calendar year 2003, in the District of Massachusetts and elsewhere,

## KENNETH SCOTT ALCOCK,

defendant herein, a resident of Westborough, Massachusetts, had and received taxable income in

the approximate sum of $63,326; upon that taxable income there was owing to the United States

of America a substantial income tax; well knowing and believing the foregoing facts, defendant

KENNETH SCOTT ALCOCK did willfully attempt to evade and defeat the said income tax due

and owing by him to the United States of America for the calendar year 2003 by failing to make

an income tax return on or before April 15, 2004, as required by law, to any proper officer of the

Internal Revenue Service, by failing to pay the Internal Revenue Service the said income tax, and

by committing the following affirmative acts: conducting business using a nominee business

entity "Scottco Enterprises," using warehouse banking services of YVO/Office Services for

purposes of concealing financial transactions, using financial accounts in the name of a nominee

entity, making extensive use of cash, providing false statements to IRS agents concerning his

income, and registering a vehicle in the name of a nominee.

All in violation of Title 26, United States Code, Section 7201.

## COUNT NINETEEN
### Tax Evasion
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

127.    The allegations in paragraphs One, Two, Four, Five, Seven, Sixteen, and Twenty-Four through Thirty of this Indictment are re-alleged and incorporated as if fully set forth herein.

128.    During the calendar year 2004, in the District of Massachusetts and elsewhere,

### KENNETH SCOTT ALCOCK,

defendant herein, a resident of Westborough, Massachusetts, had and received taxable income in the approximate sum of $63,259; upon that taxable income there was owing to the United States of America a substantial income tax; well knowing and believing the foregoing facts, defendant KENNETH SCOTT ALCOCK did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for the calendar year 2004 by failing to make an income tax return on or before April 15, 2005, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service the said income tax, and by committing the following affirmative acts: conducting business using a nominee business entity "Scottco Enterprises," using financial accounts in the name of a nominee entity, making extensive use of cash, and providing false statements to IRS agents concerning his income.

All in violation of Title 26, United States Code, Section 7201.

## COUNT TWENTY
### Tax Evasion
### (Title 26, United States Code, Section 7201)

The Grand Jury further charges:

129.    The allegations in paragraphs One, Two, Four, Five, Seven, Sixteen, and Twenty-Four through Thirty of this Indictment are re-alleged and incorporated as if fully set forth herein.

130.    During the calendar year 2005, in the District of Massachusetts and elsewhere,

### KENNETH SCOTT ALCOCK,

defendant herein, a resident of Westborough, Massachusetts, had and received taxable income of approximately $42,593; upon said taxable income there was owing to the United States of America a substantial income tax; well knowing and believing the foregoing facts, defendant KENNETH SCOTT ALCOCK did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for the calendar year 2005 by filing with the IRS a false and fraudulent individual income tax return, Form 1040, in which he willfully under-reported his income, and by committing the following affirmative acts: directing third parties to make payments to "Scottco Enterprises," making extensive use of cash, and using bank accounts held in the names of other individuals.

All in violation of Title 26, United States Code, Section 7201.

A TRUE BILL

FOREPERSON

Date: _8-12-2009_

MICHAEL K. LOUCKS
ACTING UNITED STATES ATTORNEY

By:    VICTOR A. WILD
Assistant United States Attorney

By:    JOHN N. KANE, JR.
Trial Attorney
U.S. Department of Justice, Tax Division

By:    JEFFREY I. SHIH
Trial Attorney
U.S. Department of Justice, Tax Division

DISTRICT OF MASSACHUSETTS

August 12th, 2009 @ 3:30

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk

-45-